**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| International Technical Coatings, Inc., an Arizona Corporation,<br><br>                Plaintiff,<br><br>vs.<br><br>William Trover, an Individual, and James McKinney, an Individual,<br><br>                Defendants. | No. 2:12-CV-01007-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion to Strike Removal Notice (Doc. 15) and Plaintiff's Emergency Motion to Remand. (Doc. 8). The Court now rules on both motions.

**I.      BACKGROUND**

On May 8, 2012, International Technical Coatings, Inc. ("Plaintiff") filed a complaint in Maricopa County Superior Court against William Trover and James McKinney (unless otherwise stated, collectively "Defendants") alleging defamation, tortious interference with business expectancy, and seeking declaratory judgment that its exclusive licensing agreement ("Agreement") with Defendants is still in effect. Defendants then filed a Notice of Removal with the United States District Court of Arizona pursuant to 28 U.S.C. § 1441(b) on the basis of diversity jurisdiction. A separate proof of service was sent to Maricopa County Superior Court Judge Duncan's clerk via email in accordance with the courtroom clerk's instructions.

On May 15, 2012, the Superior Court held a Hearing on an Order to Show Cause to determine whether a temporary restraining order should be issued against Defendants. Defendants appeared at the Hearing telephonically and informed the court that due to their Notice of Removal, the Superior Court had no jurisdiction and could not issue an injunction or temporary restraining order against Defendants. At the Hearing, Judge Duncan acknowledged receipt of Defendants' Notice of Removal and dismissed the Hearing as moot. (Doc. 17-1 at 5).

Plaintiffs subsequently filed an Emergency Motion to Remand, claiming that removal was improper because the amount in controversy does not exceed the $75,000 required for diversity jurisdiction in a federal district court. On May 22, 2012, Plaintiff also moved to strike Defendants' Notice of Removal for failure to comply with the provisions of 28 U.S.C. § 1441. Plaintiff claims that Defendants failed to provide the clerk of the Superior Court with sufficient notice of removal pursuant to 28 U.S.C. § 1446(d) and now seeks remand to Superior Court. (Doc. 15).

In response to Plaintiff's Motion to Strike Removal Notice, Defendants properly re-filed their Notice of Removal with the Superior Court on May 23, 2012. Defendants believe that "the prompt filing of Mr. Trover's Notice of Removal with the state court effectuates the removal to federal court until such time as the case is remanded," making the Plaintiff's Motion to Strike Removal Notice moot. (Doc. 17 at 3).

## II. LEGAL STANDARD

### A. The Removal Statute and Notice

The removal statute, 28 U.S.C. § 1441, provides, in pertinent part: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only . . . actions that originally could have been filed in federal court may be removed to federal court by the defendant."). Courts strictly construe the removal statute against removal jurisdiction. *See*

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Mesa Indus., Inc. v. Eaglebrook Prods., Inc.*, 980 F. Supp. 323, 324 (D. Ariz. 1997). There is a "strong presumption" against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)); *see Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (quoting *Gaus*). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566; *see Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999) ("The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction.") (citing *Emerich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)); *Duncan*, 76 F.3d at 1485 (stating that "defendant[] has the burden of establishing that removal was proper"); *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) ("[T]he party asserting diversity jurisdiction bears the burden of proof."). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Notice of removal must be filed with the district court "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . ." 28 U.S.C.A. § 1446(b)(1). "Promptly after the filing of such notice of removal of a civil action[,] the defendant . . . shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded." 28 U.S.C.A. § 1446(d).

**B.  The Diversity Jurisdiction Statute and a Removing Defendant's Burden of Establishing the Amount in Controversy**

Pursuant to 28 U.S.C. § 1332, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). When the amount in controversy is in dispute or unclear, "the

Supreme Court has drawn a sharp distinction between original jurisdiction and removal jurisdiction." *Gaus*, 980 F.2d at 566 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–90 (1938)). "In a removed case, . . . the plaintiff chose a state rather than federal forum. Because the plaintiff instituted the case in state court, 'there is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court[.]'" *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 375 (9th Cir. 1997) (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 290). But, "[w]here the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds [$75,000]." *Id.* at 376 (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)).

In actions seeking injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). "Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank (South Dakota), NA*, 264 F.3d 952, 958 (9th Cir. 2001) (citing *Ridder Bros. Inc., v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) ("The value of the thing sought to be accomplished by the action may relate to either or any party to the action.") (internal quotation omitted)). However, "[i]f it is *unclear* what amount of damages the plaintiff has sought, . . . then the defendant bears the burden of actually proving the facts to support . . . the jurisdictional amount." *Gaus*, 980 F.2d at 566–67 (emphasis in original). Accordingly, the court's inquiry into the amount in controversy is not confined to the face of the complaint. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). "[T]he court may consider facts in the removal petition, and may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (quoting *Singer*, 116 F.3d at 377). A court may also consider supplemental evidence later provided by the removing defendant, which was not originally included in the removal notice. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (Evidence included in the

defendant's response considered a valid amendment to its notice of removal where the plaintiff made no attempt to offer contrary evidence or challenge defendant's monetary valuation as "inflated and not an honest assessment of damages"). However, "the great weight of authority favors [the] position that the amount of a counterclaim may not be considered in determining the amount in controversy."*Mesa Indus.*, 980 F. Supp. at 326.

Nevertheless, a court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture." *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1002 (9th Cir. 2007). Neither can removal "be based simply upon conclusory allegations where the [complaint] is silent" as to the dollar amount of damages the plaintiff seeks. *Singer*, 116 F.3d at 377 (internal quotations omitted). In determining whether the jurisdictional minimum has been met, the court can consider volume of sales, revenue generated, or profit earned or lost by either party. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 348 (1977); *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008); *Mahoney v. Depuy Orthopaedics, Inc.*, 2007 WL 3341389, *5–6 (E.D.Cal. Nov. 8, 2007) (In an action for injunctive relief, the court based its amount in controversy calculation on plaintiff's prior compensation and sales revenue for the year immediately preceding litigation to approximate future losses). Thus, the defendant must set forth facts supporting the assertion that the amount in controversy exceeds the statutory minimum. *Gaus*, 980 F.2d at 567; *Turner v. Am. Hardware Mut. Ins. Co.*, 2009 WL 2259612 (D. Ariz. July 29, 2009).

## III.   ANALYSIS

### A.   Plaintiff's Motion to Strike Removal Notice

Under 28 U.S.C. § 1446(b), a defendant must file notice of removal with the district court within 30 days after his receipt of the initial pleadings or within 30 days after service of the summons. A defendant must also file a copy of the notice of removal with the state court clerk "[p]romptly after the filing of such notice of removal of a civil action [with the district court]." 28 U.S.C. § 1446(d). Section 1446(d) does not set a particular time limitation for filing a notice of removal in state court. Rather, "[t]he statutory time limit for removal petitions is merely a formal and modal requirement and is not jurisdictional. *Fristoe v.*

- 5 -

*Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980).

Here, Defendants were served with a copy of the original Complaint on May 11, 2012. Defendants' Notice of Removal was then filed with the district court on May 14, 2012, falling well within § 1446(b)'s 30-day statutory deadline. Defendants also sent a copy of their Notice of Removal to Superior Court Judge Duncan's clerk via email on the same day (May 14, 2012), but Plaintiff argues that Defendants' initial email copy failed to comply with the notice requirements of the removal statute. Because Defendants properly re-filed their Notice of Removal with the Superior Court on May 23, 2012 to correct for any notice errors or deficiencies, however, this Court need not address whether Defendants' May 14, 2012 Notice of Removal was procedurally sufficient. This Court finds Defendants' corrective re-filing—submitted to the Superior Court only one day after Plaintiff filed its Motion to Strike Removal Notice on May 22, 2012 and ten days after Defendants filed their original Notice of Removal with the district court—sufficiently prompt under § 1446(d). Plaintiff's Motion to Strike Removal Notice is therefore moot.

### B.  Plaintiff's Motion to Remand

This Court has a duty to ensure that it has jurisdiction over all cases before it. *Valdez*, 372 F.3d at 1116. To support removal based on diversity jurisdiction, Defendants here have the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *See Sanchez*, 102 F.3d at 404; 28 U.S.C. § 1332; *Valdez*, 372 F.3d at 1117 ("a conclusory allegation neither overcomes the strong presumption against removal jurisdiction, nor satisfies the defendant's burden of setting forth, in the removal petition itself, the *underlying facts* supporting its assertion that the amount in controversy exceeds the applicable dollar value"(internal quotations omitted)). "Where doubt regarding the right to removal exists, a case should be remanded to state court." *Matheson v. Progressive Speciality Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003). With this standard in mind, the Court now turns to whether Defendants have met their burden of proof.

Defendants' argument that the amount in controversy exceeds $75,000 proceeds as follows. First, Defendants claim that they will lose more than $125,000 each year that they

are prohibited from communicating with Plaintiff's customers (which include Wal-Mart, The Home Depot, Lowe's and Elite Storage Solutions). In support, Defendants attach Mr. Trover's declaration which states that "[s]ince terminating the licencing agreement with ITC, [he has] had the opportunity to make numerous large sales of [his] invention." (Doc 22-2 at 2). Mr. Trover also highlights as demonstrative a purchase order quote submitted to Elite Storage Solutions worth $9,000 in profit if Elite were to retain him as a supplier of the products covered by the Agreement. *Id*. at 2–3. Second, Defendants note that if granted, Plaintiff's request for declaratory relief would entitle Defendants to over $110,000 in product royalties and profits if the Agreement is found to still be in effect. Using the average of four royalty payments received by Defendants between November of 2011 and February 2012 as the basis for expected future earnings per month ($514.50), Defendants extrapolate the total value of the Agreement's remaining 18-year period to arrive at a value exceeding the jurisdictional amount. Third, Defendants argue that the value of their newly-filed counterclaim, which exceeds $500,000, also fulfills the statutory minimum. (Doc. 1 at 3–4, Doc. 22-2 at 2).

Plaintiff argues, however, that this case must be remanded to state court because Defendants have "failed to provide any facts to demonstrate that the amount in controversy exceeds $75,000, much less to demonstrate such facts by a preponderance of the evidence." (Doc. 24 at 2). Citing *United States v. $133,420.00 in U.S. Currency*, Plaintiff argues that Defendants' first claim—that the requested injunction would cost them more than $125,000 per year—is insufficient because it is based on nothing more than "a conclusory, self-serving affidavit" that lacks "detailed facts and any supporting evidence." 672 F.3d 629, 638 (9th Cir. 2012). Plaintiff believes that Mr. Trover's claim to have had "the opportunity to make numerous large sales," in addition to the one quote submitted to Elite (evidence that constitutes neither an actual sale of product nor an agreement to sell), falls far short of substantiating "even a legitimate expectation of profit . . . ." (Doc. 24 at 4). Plaintiff also asserts that Defendants assessed value of the Agreement ($111,000 over an 18-year period) is highly speculative and unproven. Plaintiff argues that the checks used by Defendants are

partially offset by advance royalty payments. Thus, Defendants' calculus does not accurately reflect past royalty payments or predict future royalty earnings. Furthermore, Plaintiff also believes that "unlike a contract to sell property or a similar type of agreement with a specific price term," the Agreement at issue includes both early termination provisions and periodic reviews for the adjustment of royalties. As a result, from Plaintiff's perspective, any assessment of future royalty payments or a valuation of the Agreement's overall worth is too speculative to establish the $75,000 required for diversity jurisdiction in a federal district court. (Doc 24 at 8). Finally, in response to Defendants third claim, Plaintiff relies on *Mesa Industries* and argues that in addition to being factually unsupported, the amount in controversy cannot be judged on a counterclaim filed by Defendants' after their Notice of Removal. 980 F. Supp. at 326.

At first blush, Defendants' aggregate claims appear to exceed $75,000. When taken in turn, however, this Court finds that each claim fails to meet the federal jurisdictional threshold. First, although the value of the requested injunctive relief can be taken into consideration when determining the amount in controversy, Defendants must provide sufficient underlying facts to support their claim. See *Gaus*, 980 F.2d at 567. Here, Defendants' alleged value of the injunction is too speculative. Defendants allege only $9,000 of possible profit based on one, undated quote to a potential customer. Additionally, unlike in *Cohn*, Plaintiff here has explicitly challenged the supplemental evidence included in Defendants' Opposition to Plaintiff's Motion to Remand as inaccurate and unreliable. (Doc.24 at 10). As Plaintiff correctly notes, a single quote, which reflects neither an actual sale nor a future agreement to sell, hardly serves as a valid basis for the $125,000 per year loss Defendants claim as a result of the proposed injunction. Furthermore, the Court finds Mr. Trover's claim that he had an "opportunity to make numerous large sales" too conclusory and factually deficient to establish the requisite amount in controversy by a preponderance of the evidence. *See Singer*, 116 F.3d at 375; *$133,420.00 in U.S. Currency*, 672 F.3d at 638.

Second, unlike in *Sanchez* where the requisite amount in controversy was not met because the defendant failed to provide *any* evidence supporting or alleging a monetary loss

or gain due to the plaintiff's requested relief, here Defendants have at least alleged an ongoing gain of approximately $514.50 per month based on what they perceive as prior royalty payments. This value alone, if applied to the remaining term of the parties' Agreement, would meet the required $75,000 for federal jurisdiction. Still, as the Plaintiff aptly notes, regardless of whether or not the relied upon historical royalty payments were indeed offset by advance royalty payments, Defendants' projected Agreement value ignores the possibility of early termination, a renegotiation of royalty terms, or the patent's failure to issue. Thus, while accurate sales figures or historical profit from at least a year preceding litigation can be considered when extrapolating future value for the purposes of establishing the jurisdictional amount, here Defendants rely on only several small royalty payments (the validity of which Plaintiff disputes) to project nearly two decades of profit. This Court finds such "speculation and conjecture" to be an insufficient base for federal diversity jurisdiction. *See Lowdermilk*, 479 F.3d at 1002.

Finally, as Plaintiff correctly argues, this Court cannot take Defendants' counterclaim into consideration when calculating the amount in controversy. *See Mesa Indus.*, 980 F. Supp. at 326; *Tapp v. Alli*, 2011 WL 5600540 (D. Ariz. Nov. 17, 2011). For all the foregoing reasons, the sum damages and the value of injunctive relief claimed by Defendants in this action is less than $75,000. Because Defendants have failed to meet their burden of establishing that this Court has diversity jurisdiction, remand is required.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Strike Removal Notice (Doc. 15) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand (Doc.8) is granted. The Clerk of the Court shall remand this action to Maricopa County Superior Court.

DATED this 18th day of June, 2012.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge